ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| ERIC J. BURGOS ROSADO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE EDUCACIÓN<br><br>Recurrido | KLRA202400173 | *RECURSO DE REVISIÓN* procedente del Departamento de Educación<br><br>Caso núm.: OASE-2021-00013<br><br>Sobre: Impugnación de Nombramientos |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

## SENTENCIA EN RECONSIDERACIÓN

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

El 4 de abril de 2024, el señor Eric J. Burgos Rosado (Sr. Burgos Rosado), por conducto de su representación legal, instó el recurso de revisión judicial de epígrafe. Solicita que revoquemos una *Resolución Sumaria y Orden* emitida y notificada el 30 de enero de 2024, por la Oficina de Apelaciones del Sistema de Educación (OASE) del Gobierno de Puerto Rico, que decretó la desestimación con perjuicio, y el cierre y archivo del caso de epígrafe.[1]

En su escrito de revisión judicial, el Sr. Burgos Rosado certificó haberle notificado la presentación del recurso al Departamento de Educación, por conducto del Lcdo. Hiram Carlo Rivera López, a su dirección de correo electrónico hiramcarlo@hotmail.com; y a la OASE, a través del Lcdo. Mario F. González Amador a la siguiente dirección mgonzalez@gomlawoffices.com.

Sin embargo, de dicha certificación no surgió que el Sr. Burgos Rosado le notificó a la Oficina del Procurador General de

---

[1] *Resolución Sumaria y Orden*, Apéndice del recurso, págs. 151-172.

Puerto Rico sobre la presentación del recurso. Ante tales circunstancias, el 17 de mayo de 2024, emitimos una *Sentencia* mediante la cual desestimamos el recurso por falta de jurisdicción.

Inconforme, el 31 de mayo de 2024, el Sr. Burgos Rosado instó una *Reconsideración*.

Posteriormente, el Departamento de Educación, representado por la Oficina del Procurador General de Puerto Rico, radicó un *Escrito en Cumplimiento de Resolución* el 26 de junio de 2024. Arguyó que el Sr. Burgos Rosado no tenía la obligación de notificarle al Procurador General la presentación del recurso de revisión judicial conforme al lenguaje de la Sección 4.2 de la Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9672, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU).[2] Ante ello, emitimos una *Resolución* el 8 de julio de 2024, dejando sin efecto la *Sentencia* desestimatoria, y procedimos a atender el recurso.

Examinados los escritos a la luz del derecho aplicable, y por los fundamentos que expondremos a continuación, modificamos la *Resolución Sumaria y Orden* recurrida a los únicos efectos de desestimar sin perjuicio. Así modificada, se confirma. En consecuencia, se desestima *sin perjuicio* el pleito de epígrafe.

**I.**

El 23 de septiembre de 2020, el Sr. Burgos Rosado presentó una querella ante el Comité de Impugnaciones del Departamento de Educación para impugnar el proceso de nombramiento llevado a cabo para los puestos de Gerente de Operaciones en varias ubicaciones de la oficina central de dicha agencia administrativa.[3]

---

[2] Véase, además, *Vistas Health Care Corporations v. Hosp. La Fe*, 190 DPR 56 (2014).

[3] *Informe para Evaluación de Querella presentada por el Prof. Eric J. Burgos Rosado el 23 de septiembre de 2020 sobre el Nombramiento en el Puesto de Gerente de Operaciones en Varias Posiciones Ubicadas en la Oficina Central*, Apéndice del recurso, págs. 74-75.

Sostuvo que el portal de Recursos Humanos del Departamento de Educación no le permitió radicar su solicitud porque, según el sistema, no cumplía con las cualificaciones mínimas establecidas. Subsiguientemente, el 4 de diciembre de 2020, el Comité de Impugnaciones emitió un informe donde determinó que no hubo violación en el proceso y declaró la querella No Ha Lugar.[4]

Insatisfecho, el Sr. Burgos Rosado presentó una *Apelación* el 10 de marzo de 2021.[5] Indicó que no pudo ingresar al portal por haber incumplido con el requisito de Certificado Regular de Director Escolar Docente del Departamento de Educación. Alegó, sin embargo, que los requisitos incluidos en la convocatoria original de la página digital no fueron los mismos que exigía el portal de Recursos Humanos al momento en el cual intentó solicitar. Arguyó, además, que la clasificación de los puestos de Gerente de Operaciones era de no docente, por lo que no aplicaba el procedimiento de reclutamiento y selección de puestos docentes usado y establecido en la Carta Circular Núm. 09-2019-2020 enmendada.[6] Ante ello, solicitó la nulidad de los nombramientos de los puestos impugnados, conforme a la Sección 6.3 (3)(c) de la Ley Núm. 8 del 4 de febrero de 2017, según enmendada, 3 LPRA sec. 1472c.

Luego de varios trámites procesales, el Departamento de Educación presentó una *Moción Asumiendo Representación Legal y en Contestación a la Apelación* el 16 de mayo de 2022.[7] Por medio de esta negó las alegaciones de la querella.

Posteriormente, el 31 de agosto de 2023, el Departamento presentó una *Moción en Solicitud de Desestimación por Falta de Acumular Partes Indispensables*, junto a una *Certificación* emitida

---

[4] *Íd.*
[5] *Escrito de Apelación, Íd.*, págs. 1-75.
[6] *Carta Circular Núm. 09-2019-2020 (Enmendada), Íd.*, págs. 199-206.
[7] *Moción Asumiendo Representación Legal y en Contestación a la Apelación, Íd.*, págs. 84-86.

por Recursos Humanos del Departamento de Educación el 29 de agosto de 2023.[8] Este último documento contenía un listado de los puestos de Gerente de Operaciones, el nombre de las personas que los ocupaban y el estatus de los puestos (carrera o confianza). En síntesis, la entidad administrativa sostuvo que los empleados regulares que ocupaban dichos puestos eran parte indispensable en el pleito de epígrafe, pues llevaban en los mismos desde hace más de dos (2) años, tenían un interés propietario sobre ellos, y no habían sido notificados sobre el caso o incluso, incluidos.

Por su parte, el 25 de septiembre de 2023, el señor Burgos Rosado presentó una *Oposición a Moción en Solicitud de Desestimación por Falta de Parte Indispensable.*[9] En lo pertinente, alegó que no fue hasta que el Departamento de Educación presentó la certificación de los puestos, emitida el 29 de agosto de 2023, que advino en conocimiento sobre cuáles de los puestos impugnados estaban ocupados y quién los ocupaba. Expuso, además, que de la agencia administrativa entender que debían incluir a los empleados como parte, él procedería a incluirlos como parte.

Sin embargo, el 30 de enero de 2024, la OASE emitió y notificó una *Resolución Sumaria y Orden,* por la cual decretó la desestimación *con perjuicio*, y el cierre y archivo del caso de epígrafe. Fundamentó su determinación en que los Gerentes de Operaciones poseen un derecho propietario sobre los puestos que ocupan y, por lo tanto, tenían que ser considerados parte indispensable. Ante la ausencia de los Gerentes de Operaciones como parte indispensable, la OASE determinó que estaba privada de jurisdicción. Además, expresó que el Departamento de Educación ejerció válidamente y cumplió con la política pública y el procedimiento establecido para

---

[8] *Moción en Solicitud de Desestimación por Falta de Acumular Partes Indispensables, Íd.*, págs. 127-133; *Certificación, Íd.*, págs. 131-133.
[9] *Oposición a Moción en Solicitud de Desestimación por Falta de Parte Indispensable, Íd.*, págs. 142-148.

la convocatoria, reclutamiento y selección para los puestos impugnados por el señor Burgos Rosado.

Posteriormente, la moción de reconsideración del Sr. Burgos Rosado presentada el 19 de febrero de 2024 fue denegada por la agencia mediante *Resolución y Orden sobre Reconsideración* emitida y notificada el 5 de marzo de 2024.

Inconforme con dicha determinación, el señor Burgos Rosado acudió ante esta Curia y señaló que la OASE cometió los siguientes errores:

### PRIMER SEÑALAMIENTO

**ERRÓ EL JUEZ ADMINISTRADOR DE LA OFICINA DE APELACIONES AL DETERMINAR QUE LAS CONVOCATORIAS FUERON REALIZADAS CONFORME A DERECHO.**

### SEGUNDO SEÑALAMIENTO

**ERRÓ EL JUEZ ADMINISTRADOR DE LA OFICINA DE APELACIONES AL DETERMINAR QUE EL REMEDIO IDÓNEO ANTE LA FALTA DE ACUMULACIÓN DE PARTE INDISPENSABLE ES LA DESESTIMACIÓN CON PERJUICIO DEL CASO.**

### TERCER SEÑALAMIENTO

**ERRÓ EL JUEZ ADMINISTRADOR DE LA OFICINA DE APELACIONES AL DETERMINAR QUE NO HABÍA CONTROVERSIAS DE HECHOS Y PROCEDIÓ A EMITIR UNA RESOLUCIÓN SUMARIA PARA DISPONER DEL CASO.**

Luego de dejar sin efecto nuestra *Sentencia* desestimatoria, el 27 de agosto de 2024, el Departamento de Educación, por conducto del Procurador General, presentó un *Escrito en Cumplimiento de Resolución*. Sostuvo en primer lugar que debemos confirmar la determinación de la OASE ante falta de parte indispensable.

En la alternativa, arguyó, que de este Tribunal entrar en los méritos, procede igualmente confirmar la *Resolución Sumaria y Orden* recurrida. En síntesis, indicó que, aunque las convocatorias originales y las del portal de la agencia administrativa no contenían los mismos requisitos, el Departamento de Educación ostentaba

discreción para añadir requisitos adicionales. Arguyó también que de la certificación emitida por Recursos Humanos del Departamento de Educación surgían los puestos en controversia y los nombres de las personas que los ocupan. Añadió que dichos puestos han estado ocupados desde hace más de dos (2) años y que el señor Burgos Rosado tuvo conocimiento de quiénes son estas personas desde casi un mes. Sostuvo, sin embargo, que él no ha traído o no les ha notificado a estos empleados sobre el pleito de marras, que por eso son parte indispensable, y, por ende, procedía la desestimación. Por último, el Departamento de Educación planteó que la OASE podía emitir una resolución sumaria sin sujeción a ningún otro trámite procesal, conforme al Artículo 12 del Reglamento Núm. 9099, Departamento de Educación, 29 de mayo de 2019; y del Reglamento Núm. 9412, Departamento de Educación, 25 de octubre de 2022; al igual que a tenor con el Artículo 3.7 de la LPAU, supra, sec. 9647.

## II.

### A.

Es norma firmemente establecida que los tribunales apelativos le deben conceder deferencia a las decisiones de las agencias administrativas. Lo anterior pues estas cuentan con experiencia y conocimiento especializado sobre asuntos ante su consideración.[10]

Como resultado, los dictámenes de una agencia administrativa gozan de presunción de legalidad y corrección.[11] Por lo tanto, las decisiones son respetadas mientras no se demuestre que dicha presunción de legalidad no sea superada o invalidada con evidencia suficiente.[12] En cuanto a las determinaciones de hecho que realiza una agencia, estas deben sostenerse si se fundamentan

---

[10] *Capó Cruz v. Junta de Planificación,* 204 DPR 581, 591 (2020); *Torres Rivera v. Pol. de PR*, 196 DPR 606, 627 (2016).

[11] *Capó Cruz v. Junta de Planificación,* supra, pág. 591; *Torres Rivera v. Pol. de PR*, supra, pág. 627.

[12] *Batista, Nobbe v. JTA. Directores*, 185 DPR 206, 216 (2012).

en evidencia sustancial que surja de la totalidad del expediente administrativo.[13]  Se ha definido la prueba sustancial como "aquella prueba relevante que 'una mente razonable podría aceptar como adecuada para sostener una conclusión'".[14]  Este criterio busca "evitar la sustitución del criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor".[15]

Por otro lado, las determinaciones de derecho pueden ser revisables en todos sus aspectos por los tribunales.[16]  Nuevamente la revisión judicial no debe servir para sustituir el criterio o la interpretación de la agencia administrativa de forma automática.[17] Los tribunales pueden descartar ese criterio, no obstante, cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo".[18]  Por lo tanto, cuando un tribunal llega a un resultado diferente al de la agencia administrativa, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba.[19]  En otras palabras, el criterio para seguir al momento de pasar juicio sobre la determinación del foro administrativo es la razonabilidad de la actuación de la agencia.[20]

Por lo tanto, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o

---

[13] *Capó Cruz v. Junta de Planificación*, supra, pág. 591; *Rolón Martínez v. Caldero López*, 201 DPR 26, 35-36 (2018).

[14] *Capó Cruz v. Junta de Planificación*, supra, pág. 591; *Rebollo v. Yiyi Motors*, 161 DPR 69, 76-77 (2004).

[15] *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79, 90 (2022) (ci*tando a Torres Rivera v. Pol. de PR*, supra, pág. 627).

[16] LPAU, supra, sec. 9675; *Capó Cruz v. Junta de Planificación*, supra, pág. 591; *Torres Rivera v. Pol. de PR*, supra, pág. 626.

[17] *Capó Cruz v. Junta de Planificación*, supra, pág. 591; *Rebollo v. Yiyi Motors*, supra, pág. 77.

[18] *Rolón Martínez v. Caldero López*, supra, pág. 36.

[19] *Otero v. Toyota*, 163 DPR 716, 729 (2005).

[20] *Oficina de Ética Gubernamental v. Martínez Giraud*, supra, pág. 89; *Torres Rivera v. Pol. de Puerto Rico*, supra, pág. 626.

interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[21]

**B.**

Tanto la Constitución estatal como la federal reconocen la protección que impide que una persona sea privada de su libertad o propiedad sin un debido proceso de ley.[22] Conforme a lo anterior, nuestro Tribunal Supremo ha resuelto en innumerables ocasiones que un empleado público de carrera posee un interés propietario sobre la retención de su empleo y del cual no puede ser privado sin un debido proceso de ley.[23] Para darle cumplimiento a esta garantía constitucional que protege a todo ciudadano cuando se atenta contra sus intereses individuales propietarios es necesario que se cumplan con unos requisitos; estos son: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente".[24] Por lo tanto, para afectar el derecho propietario que posee un empleado público sobre su plaza "es necesario celebrar una vista informal previa en donde se le dé al empleado la oportunidad de ser escuchado".[25]

---

[21] *Super Asphalt Pavement, Corp. v. Autoridad para el Financiamiento de la Insfraestructura de Puerto Rico*, 206 DPR 803, 819 (2021).

[22] Art. II, Sec. 7, Const. ELA [Const. PR], LPRA, Tomo I; Emda. V, Const. EE.UU., LPRA, Tomo I.

[23] *Rosa Maisonet v. ASEM*, 192 DPR 368, 384 (2015); *González Segarra v. CFSE*, 188 DPR 252, 279 (2013); *Vázquez González v. Mun. San Juan*, 178 DPR 636, 643 (2010); *Vázquez Cintrón v. Banco Desarrollo*, 171 DPR 1, 21 (2007).

[24] *Rosa Maisonet v. ASEM*, supra, pág. 384; *Vázquez González v. Mun. San Juan*, supra, pág. 643.

[25] *Rosa Maisonet v. ASEM*, supra, pág. 384 (*citando a Vázquez González v. Mun. San Juan*, supra, págs. 643-644).

En lo pertinente a la controversia de autos, un puesto regular o de carrera es definido como el "puesto donde el empleado del Departamento adquiere derecho propietario o su permanencia".[26] El servicio de carrera incluye específicamente al personal docente dedicado a la enseñanza, y orientación de estudiantes y demás denominaciones y categorías que existen o pueda existir dentro de la nomenclatura del Departamento de Educación; igual que al personal técnico, directivo y de supervisión docentes.[27]

### C.

Por otro lado, una parte indispensable es aquella que tiene un interés común "sin cuya presencia no pueda adjudicarse la controversia".[28] Estas personas se harán partes y se acumularán como demandantes o demandadas, según proceda, y cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada.[29]

El interés común aplicable en casos de parte indispensable no es cualquier interés en el pleito, sino que tiene que ser real o inmediato, o de tal orden que impida producir un decreto adecuado sin destruir radicalmente los derechos de esa parte.[30] En otras palabras, no puede tratarse de meras especulaciones o de un interés futuro.[31]

Nuestro Tribunal Supremo ha expresado que la omisión de incluir una parte indispensable incide sobre el debido proceso de ley que cobija al ausente.[32] La regla es parte de la protección

---

[26] Artículo 1.03 (46), Ley Núm. 85 del 29 de marzo de 2018, según enmendada, 3 LPRA sec. 9801b; Artículo 12 de la Ley Núm. 8-2017, supra, sec. 1477a.
[27] Reglamento Núm. 6743, Departamento de Educación, 23 de diciembre de 2003, pág. 10; véase, además, Reglamento 9180, Departamento de Educación, 17 de junio de 2020, pág. 13.
[28] Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1; *Fideicomiso de Conservación de Puerto Rico y Para la Naturaleza, Inc. v. Estado Libre Asociado de Puerto Rico*, 211 DPR 521, 530 (2023).
[29] Regla 16.1 de Procedimiento Civil, supra.
[30] *Allied Management Group, Inc. v. Oriental Bank*, 204 DPR 374, 390-391 (2020*); Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).
[31] *López García v. López García*, 200 DPR 50, 64 (2018).
[32] *Romero v. S.L.G. Reyes*, supra, págs. 733-734.

constitucional que impide que una persona sea privada de su libertad o propiedad sin un debido proceso de ley. La norma responde, además, a la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo.[33]

El propósito de la regla sobre acumulación indispensable de partes tiene el propósito de proteger a la persona que no está presente de los efectos legales de la sentencia y evitar la multiplicidad de pleitos.[34]

Por otra parte, la determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada caso.[35] Sobre el particular, al citar al tratadista Cuevas Segarra, subrayó que:

> [l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia.[36]

Asimismo, nuestro Tribunal Supremo ha expresado que la falta de parte indispensable es un planteamiento que puede presentarse en cualquier momento durante el proceso judicial. Es decir, se puede presentar por primera vez en apelación e, incluso, un tribunal apelativo puede suscitarlo por su propia cuenta, ya que incide sobre la jurisdicción del tribunal.[37] En otras palabras, la

---

[33] *RPR & BJJ Ex Parte*, 207 DPR 389, 407 (2021); *Allied Management Group, Inc. v. Oriental Bank*, supra, pág. 389; véase, además, Art. II, Sec. 7, Const. ELA [Const. PR], supra; Emda. V, Const. EE.UU., supra.
[34] *López García v. López García*, supra, pág. 65.
[35] *Íd.*; *Romero v. S.L.G. Reyes*, supra, pág. 732.
[36] *López García v. López García*, supra, págs. 64-65 (*citando a* J.A. Cuevas Segarra, *Tratado de derecho procesal civil,* 2ª ed., Estados Unidos, Pubs. JTS, 2011, T.II, pág. 695).
[37] *López García v. López García*, supra, pág. 65; *Romero v. S.L.G. Reyes,* supra, pág. 733.

ausencia de una parte indispensable priva al tribunal de jurisdicción para atender la controversia. Por lo que, ante la ausencia de una parte indispensable, el tribunal debe desestimar la acción judicial.[38]

## D.

Es norma conocida que la desestimación es "la sanción máxima, la pena de muerte procesal, contra una parte".[39] De modo que, a pesar de que nuestro Derecho Procesal Civil les confiere a los tribunales la facultad para desestimar pleitos con perjuicio en determinadas circunstancias, esta debe ejercerse juiciosa y apropiadamente.[40] La razón para lo anterior es que la desestimación priva al demandante de su día en corte para hacer valer las reclamaciones que válidamente tenga en contra de otros.[41]

Cónsono con lo anterior, se ha desarrollado una política pública judicial inclinada a favorecer que los casos se ventilen en los méritos y que se recurra a la desestimación de un pleito con perjuicio excepcionalmente.[42] Al determinar si procede imponer la sanción severa de la desestimación, los tribunales deben hacer un balance entre dos (2) intereses; a saber, la política judicial de atender los casos en sus méritos y procurar la rápida dilucidación de las controversias.[43] Por ende, nuestro Tribunal Supremo ha resuelto que la desestimación ante la falta de parte indispensable debe ser sin perjuicio.[44]

---

[38] *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 677-678 (2012); *Romero v. S.L.G. Reyes,* supra, pág. 723.

[39] *VS PR, LLC v. Drift-Wind, Inc.,* 207 DPR 253, 264 (2021) (*citando a* R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho Procesal Civil,* 6ª ed., San Juan, Ed. LexisNexis, 2017, pág. 250).

[40] *VS PR, LLC v. Drift-Wind, Inc.,* supra, pág. 264; *Maldonado v. Srio. De Rec. Naturales,* 113 DPR 494 (1982).

[41] *VS PR, LLC v. Drift-Wind, Inc.,* supra, pág. 264.

[42] *Íd.,* supra, pág. 264; *Mejías v. Carrasquillo,* 185 DPR 288, 298 (2012).

[43] *VS PR, LLC v. Drift-Wind, Inc.,* supra, pág. 264.

[44] *Cirino González v. Adm. Corrección,* 190 DPR 14 (2014); *Romero v. S.L.G. Reyes,* supra.

**III.**

En el presente caso, el señor Burgos Rosado solicita que declaremos nulos los nombramientos realizados por el Departamento de Educación para llenar los puestos de Gerente de Operaciones ubicados en diferentes áreas de la oficina central de dicha agencia administrativa. También suplica que ordenemos a dicha entidad a realizar el proceso de selección nuevamente para cubrir los mencionados puestos, y para permitir que se enmiende la apelación presentada por el señor Burgos Rosado a nivel administrativo con el propósito de acumular a los empleados que ocupan los puestos en controversia como parte indispensable. No obstante, la ausencia de parte indispensable nos priva de jurisdicción para atender y resolver la controversia en sus méritos. Veamos.

Conforme a la norma jurídica esbozada, nuestro Tribunal Supremo ha resuelto en innumerables ocasiones que un empleado público de carrera posee un interés propietario sobre la retención de su empleo y del cual no puede ser privado sin un debido proceso de ley. Por eso, para afectar el derecho propietario que posee un empleado público sobre su plaza, es necesario celebrar una vista informal previa en donde se le dé al empleado la oportunidad de ser escuchado.

Asimismo, un empleado regular o de carrera incluye a empleados docentes, pero también a personal técnico, directivo y de supervisión docentes. Según se desprende de la propia certificación del Departamento de Educación, los Gerentes de Operaciones caen bajo el estatus de puesto regular.[45] Por ende, los empleados que ocupan esos puestos ostentan un derecho propietario o permanencia con protección constitucional y, por lo tanto, se les

---

[45] *Certificación,* Apéndice del recurso, págs. 131-133.

debe garantizar unas garantías mínimas incluyendo un proceso ante un juez imparcial y la oportunidad de ser oído.

Del expediente del caso de marras se desprende que, el señor Burgos Rosado tiene conocimiento sobre quiénes son dichos empleados, sin que les hubiese notificado o acumulado al caso de epígrafe. Además, en la oposición a la solicitud de desestimación, el señor Burgos Rosado sostuvo que no existen derechos propietarios que puedan verse afectados porque los nombramientos son nulos. En la alternativa, indicó que, si de la agencia administrativa entendía que debían incluir a los empleados como parte, él procedía a incluirlos como parte.

Subsiguientemente, la OASE emitió una *Resolución Sumaria y Orden* emitida y notificada el 30 de enero de 2024, desestimando con perjuicio por falta de parte indispensable.

Cónsono con la sección anterior, la omisión de acumular a una parte indispensable incide sobre los derechos constitucionales del debido proceso de ley y disfrute de propiedad de dicha persona. Ciertamente, para determinar si procede declarar la nulidad de los nombramientos realizados por el Departamento de Educación, se puede afectar ese derecho propietario que tienen las personas que ocupan los puestos de Gerente de Operaciones.

A la luz de lo expuesto, concluimos que no le asiste razón al señor Burgos Rosado. En su *Resolución Sumaria y Orden*, la agencia expresó claramente que "**[l]a ausencia de parte indispensable nos priva de jurisdicción para atender y resolver la reclamación, por lo que procedería la desestimación de la Apelación**".[46] Sin embargo, tratándose de falta de parte indispensable, se modifica y confirma la decisión recurrida para que la misma sea *sin perjuicio*.

---

[46] *Resolución Sumaria y Orden, Íd.*, pág. 162 (Énfasis en el original).

## IV.

En virtud de lo anterior, modificamos la *Resolución Sumaria y Orden* recurrida a los únicos efectos de desestimar sin perjuicio. Así modificada, se confirma. En consecuencia, se desestima *sin perjuicio* el pleito de epígrafe.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Rivera-Marchand concurre sin escrito.

La juez Cintrón Cintrón concurre con el resultado al entender que la disposición final emitida por el juez administrativo no debe modificarse.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones